J. Raza Lawrence, *Pro Hac Vice*
CA State Bar No. 233771
ZUBER LAWLER LLP
2029 Century Park E, Suite 400
Los Angeles, California 90067   USA
Telephone:  +1 (213) 596-5620
rlawrence@zuberlawler.com

Attorney for James M. Fejes, Jr.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JAMES M. FEJES, JR.,<br><br>               Plaintiff,<br><br>     v.<br><br>BRYAN BEDFORD, in his official capacity as Administrator of the Federal Aviation Administration, and the FEDERAL AVIATION ADMINISTRATION,<br><br>               Defendants. | Case No. _____ |

**COMPLAINT FOR WRIT OF MANDAMUS, DECLARATORY AND**

**INJUNCTIVE RELIEF, AND RELIEF UNDER THE ADMINISTRATIVE**

**PROCEDURE ACT**

**(49 U.S.C. §§ 44703, 44710; 5 U.S.C. §§ 702, 706; 28 U.S.C. §§ 1331, 1361; 28 U.S.C.**

**§§ 2201-2202; Pub. L. No. 112-153)**

I.     <u>**INTRODUCTION**</u>

     1.     This action seeks to compel the Federal Aviation Administration ("FAA") to

issue Plaintiff a permanent private pilot certificate under 49 U.S.C. § 44703(a), and to

4534-1002 / 4179924.3

enjoin the FAA from rescinding, revoking, suspending, canceling, placing any hold upon, or otherwise impairing certificates it has already issued absent the written notice and procedural protections required by the Pilot's Bill of Rights, Pub. L. No. 112-153, and the Due Process Clause of the Fifth Amendment.

2. In 2018, the FAA revoked Plaintiff's airman certificate under 49 U.S.C. § 44710(b)(2). No criminal charges were ever filed. In 2025, Plaintiff reapplied for certification, passed all required FAA knowledge examinations, obtained a current FAA medical certificate, and successfully completed a practical checkride with an FAA-authorized Designated Pilot Examiner who pre-cleared Plaintiff's eligibility with the FAA before administering the test. The FAA issued Plaintiff a student pilot certificate in August 2025 and a temporary private pilot certificate in December 2025.

3. The FAA has since determined internally that the certificates were issued in error and has sought Plaintiff's voluntary surrender through informal telephone calls, without issuing the timely, written notification and required advisements mandated by the Pilot's Bill of Rights, Pub. L. No. 112-153, and without initiating any formal written certificate action providing the process required by law. No Order of Revocation, Emergency Order, Notice of Proposed Certificate Action, or any other formal written determination has been issued. Plaintiff's temporary certificate expires on April 21, 2026. The FAA's failure to issue the permanent certificate, coupled with its informal efforts to secure surrender while withholding written process, threatens imminent and irreparable harm.

4. Post–*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), this Court

reviews the FAA's statutory interpretations de novo without *Chevron* deference; that standard materially alters any analysis that previously rested on *Chevron* in the now-final Ninth Circuit proceeding.

## II. <u>JURISDICTION AND VENUE</u>

5. This action challenges unlawful agency inaction and informal conduct that has not been reduced to any final, reviewable FAA order or written certificate action. The FAA has issued no Order of Revocation, Emergency Order, Notice of Proposed Certificate Action, or other formal written determination regarding Plaintiff's 2025 certificates. The FAA's informal communications and internal deliberations do not constitute final agency action or a reviewable "order." *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). Accordingly, 49 U.S.C. § 46110, which channels review of FAA "orders" to the courts of appeals, does not apply to deprive this Court of jurisdiction on these facts. Plaintiff seeks to compel discrete agency action unlawfully withheld, including issuance of Plaintiff's permanent private pilot certificate, and to enjoin informal certificate deprivation absent the written notice and procedural protections required by law. *See Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004).

6. This Court retains jurisdiction over claims that are collateral to any FAA order and not "inescapably intertwined" with the merits of an administrative determination. *Mace v. Skinner*, 34 F.3d 854, 858 (9th Cir. 1994). Here, as in *Mace v. Skinner*, Plaintiff's claims are collateral to any certificate order and do not seek review of the merits of any particular revocation order. *Mace* recognizes district court jurisdiction for general collateral challenges to allegedly unconstitutional practices and policies not requiring direct review

of an FAA order. *See also McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991). Plaintiff's claims challenge the FAA's failure to issue any determination, the procedural violations attending the agency's informal conduct, the constitutional validity of the FAA's de facto lifetime disqualification policy, and the legal validity of the agency's reliance on an unpublished internal order. These claims do not require review of any FAA order. In the alternative, and in the rare and narrow circumstances recognized by *Leedom v. Kyne*, 358 U.S. 184 (1958), this Court retains jurisdiction to prevent an asserted exercise of power specifically withheld by Congress that would otherwise deprive Plaintiff of a right Congress assured. Here, Plaintiff challenges the FAA's reliance on an unpublished internal order and informal means to impose a de facto permanent disqualification not found in statute or regulation, while withholding a written, reviewable decision.

7. No adequate administrative remedy exists. The NTSB lacks jurisdiction absent a formal FAA certificate action, and it cannot provide the mandamus and constitutional relief Plaintiff seeks on the timeline required to prevent irreparable harm associated with the impending expiration of Plaintiff's temporary certificate. Under *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212-13 (1994), district court jurisdiction is proper where preclusion would foreclose meaningful judicial review and the claims are collateral to the agency's ordinary adjudicative scheme and raise predominantly legal and constitutional questions. *See also Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023). Those considerations apply here because no FAA order exists to invoke the usual administrative review pathway, and Plaintiff's claims arise from agency inaction and informal conduct outside any formal certificate-action process.

8. Plaintiff invokes this Court's federal question jurisdiction under 28 U.S.C. § 1331 and mandamus jurisdiction under 28 U.S.C. § 1361. Plaintiff seeks non-monetary relief, and sovereign immunity is waived under 5 U.S.C. § 702. Plaintiff also seeks relief under 5 U.S.C. § 706 and declaratory relief under 28 U.S.C. § 2201.

9. Venue is proper in the District of Alaska under 28 U.S.C. § 1391(e). Plaintiff resides in Anchorage, Alaska, and a substantial part of the events giving rise to the claims occurred in this District, including the Anchorage FSDO's conduct in directing the informal enforcement contacts.

## III. PARTIES

10. Plaintiff James M. Fejes, Jr. is an individual residing at 920 West 21st Avenue, Anchorage, Alaska 99503. He holds FAA-issued student pilot and temporary private pilot certificates under FAA Airman Certificate No. 3817062, with the temporary private pilot certificate expiring April 21, 2026.

11. Defendant Bryan Bedford is the Administrator of the FAA and is sued in his official capacity. Pursuant to Federal Rule of Civil Procedure 25(d), any successor to the FAA Administrator is automatically substituted as a party.

12. Defendant Federal Aviation Administration is an agency of the United States within the Department of Transportation.

## IV. FACTUAL ALLEGATIONS

### A. The 2018 Revocation

13. On or about July 1, 2015, the FAA issued Plaintiff a private pilot certificate.

14. In 2018, the FAA revoked Plaintiff's airman certificate under 49 U.S.C. §

44710(b)(2) based on information supplied by the Alaska Alcohol and Marijuana Control Office ("AMCO") in connection with AMCO Notice of Violation Case AB17-0402 (FAA Case Number 2018AL030015; NTSB Docket SE-30550) (the "Notice of Violation"). The FAA's enforcement action was initiated based on AMCO's referral and relied primarily on documents and evidence transmitted by AMCO. The revocation was affirmed by the National Transportation Safety Board in Order No. EA-5927 (May 31, 2022) and by the Ninth Circuit in *Fejes v. FAA*, 98 F.4th 1156 (9th Cir. 2024). The Ninth Circuit's opinion applied *Chevron* deference to agency statutory interpretations. *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, *Inc.*, 467 U.S. 837 (1984), was overruled on June 28, 2024. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).

15. Plaintiff does not seek to relitigate the 2018 revocation, which is final. The following facts, however, are relevant to the reliability of the predicate on which the FAA's current enforcement rests and to the arbitrary and capricious nature of the agency's conduct. The AMCO investigation that produced the referral to the FAA was itself tainted by investigator bias. On October 24, 2017, AMCO Special Investigator Amanda Stonecipher sent an email to fellow investigator Joe Hamilton stating: "I wanted to paint the picture for the Board as best I could to show Fejes and the lawyer are flat lying and covering up what is going on." This email was written before the FAA was formally assigned the case. The biased memo Stonecipher prepared was transmitted to FAA Special Agent Montana Alexander as the evidentiary foundation for federal enforcement.

16. On October 19, 2017, AMCO Investigator Joe Hamilton transmitted the transfer manifest records directly to FAA Special Agent Montana Alexander at

montana.alexander@faa.gov. His transmittal email asked: "Did I already send you the NOV?" — confirming he was simultaneously transmitting the AMCO Notice of Violation to the FAA. This occurred before Stonecipher's October 24, 2017 email, meaning the manifests went to the FAA even before Stonecipher finished writing her biased Board memo. The investigation was still ongoing when Hamilton was already feeding documents to the FAA.

17. The 2018 revocation order did not contain the word "permanent," "lifetime," "forever," or "indefinite." As the FAA's own Supervisory Aviation Safety Inspector acknowledged in an internal email dated February 6, 2026: "The revocation was a life time revocation but it doesn't spell that out in the attached revocation order."

18. The Alaska Marijuana Control Board heard the matter underlying AMCO Notice of Violation Case AB17-0402 at its November 14-15, 2017 meeting. The Board took no action and imposed no penalty. The state adjudicative body with authority over the underlying conduct heard the full presentation, including testimony from AMCO Investigator Stonecipher, and determined that no sanction was warranted.

19. No criminal charges arising from the underlying conduct were ever filed against Plaintiff. No indictment, information, or criminal conviction exists. The five-year federal statute of limitations under 18 U.S.C. § 3282(a) for the underlying conduct expired in approximately 2022.

20. Plaintiff operated a marijuana cultivation facility, Flying High Investments, LLC, licensed by AMCO under Alaska Statute § 17.38.070(b). Under Alaska law, it is expressly lawful for a licensed cultivation facility to deliver, distribute, or sell marijuana

to a retail marijuana store. Alaska Stat. § 17.38.070(b). The FAA itself conceded this point in its Response Brief before the NTSB: "[U]nder Alaska state law it is lawful for a licensed cultivation facility to deliver, distribute, or sell marijuana to a retail marijuana store. *See* Alaska Statutes (AS) § 17.38.070(b)." FAA Response Brief at 3, *In re Certificate of James Fejes*, NTSB Docket No. SE-30550 (Oct. 30, 2020). In remote areas of Alaska, aircraft are often the only practical mode of transporting goods between communities. This geographic reality was acknowledged by the Ninth Circuit: "In some remote parts of Alaska, aircraft are the only mode of delivering goods, including marijuana." *Fejes v. FAA*, 98 F.4th 1156, 1159 (9th Cir. 2024).

21.     The FAA's own regulations contain an exemption that is directly relevant to Plaintiff's conduct. 14 C.F.R. § 91.19(a) generally prohibits operating a civil aircraft "with knowledge that narcotic drugs, marihuana, and depressant or stimulant drugs or substances as defined in Federal or State statutes are carried in the aircraft." 14 C.F.R. § 91.19(b), however, expressly provides: "Paragraph (a) of this section does not apply to any carriage of narcotic drugs, marihuana, and depressant or stimulant drugs or substances authorized by or under any Federal or State statute or by any Federal or State agency." Plaintiff's transportation of marijuana was expressly authorized by Alaska Statute § 17.38.070(b) and licensed by the Alaska Marijuana Control Office (AMCO), a State agency. Under the plain text of § 91.19(b), Plaintiff's conduct was exempt from the prohibition in § 91.19(a). In the prior proceedings, the FAA did not charge Plaintiff under § 91.19(a); instead, it predicated the § 44710(b)(2) revocation on 21 U.S.C. § 841(a). As a result, the agency never addressed § 91.19(b)'s express carveout for state-authorized carriage, despite Plaintiff's operations

being licensed by AMCO under Alaska law.

### B. The FAA's Prior Medical Enforcement and Withdrawal

22. In early 2018, the FAA opened a separate enforcement action (EIR #2018AL900002) seeking to revoke Plaintiff's airman medical certificate based on the same underlying events that gave rise to the § 44710 revocation. The medical enforcement was transferred to FAA legal (AGC) on February 12, 2018.

23. Plaintiff submitted required documentation, including pharmacy records, a physician's note, and a negative urine drug screen. Regional Flight Surgeon Dr. Richard Johannessen conducted a substantive review and concluded Plaintiff was medically qualified. On April 5, 2018, the FAA withdrew the medical enforcement action. Four months later, on August 21, 2018, the FAA filed the Emergency Order of Revocation under § 44710(b)(2).

24. The FAA's own medical division, reviewing the same underlying events and the same individual, determined that Plaintiff posed no medical or safety disqualification. This prior determination is directly relevant to whether any genuine ongoing safety concern supports the current lifetime bar.

### C. Divestiture and Clean Record

25. In 2019, Plaintiff permanently divested himself of all ownership, management, and financial interests in the business entity associated with the underlying conduct. Since 2019, Plaintiff has had no involvement in any marijuana-related activity, no AMCO interactions, and no FAA violations, incidents, or enforcement actions of any kind.

### D. The 2025 Reapplication and Certificate Issuance

26. On July 15, 2025, Plaintiff received a Second Class FAA medical certificate from FAA Aviation Medical Examiner Dr. Robert Thomas. The certificate was transmitted to FAA headquarters on July 23, 2025. Under 14 C.F.R. § 67.407(c), a medical certificate is "considered to be affirmed as issued" unless the Federal Air Surgeon, the Manager of the Aeromedical Certification Division, or a Regional Flight Surgeon reverses the issuance within 60 days. The 60-day window expired on or about September 13, 2025. No authorized official reversed the medical certificate within that window. The medical certificate was affirmed by operation of federal regulation.

27. On or about August 25, 2025, Plaintiff applied for a student pilot certificate through the FAA's Integrated Airman Certification and Rating Application ("IACRA") system. IACRA queried the FAA's USAS/CAIS airman certificate database and returned no disqualifying flag. The FAA issued Plaintiff a student pilot certificate under FAA Airman Certificate Number 3817062.

28. On or about December 22, 2025, Plaintiff applied to upgrade his certificate to the private pilot level. Prior to this application, Plaintiff passed all required FAA knowledge examinations and successfully completed a practical checkride administered by FAA-authorized Designated Pilot Examiner John D. Jeffers. Before administering the checkride, Jeffers verified Plaintiff's eligibility with the FAA and was informed there was no issue.

29. The FAA issued Plaintiff a temporary private pilot certificate valid for 120 days through April 21, 2026.

### E.  The FAA's Internal Response

30.  On February 13, 2026, Plaintiff filed Freedom of Information Act Request No. 2026-02132AL with the FAA Airmen Certification Branch, seeking all internal FAA communications regarding his case, the AMCO NOV disposition, the 2025 certificate reissuances, and any planned revocation or rescission of his certificates. The FAA responded on March 24, 2026, producing certain documents but withholding others under FOIA Exemption 5 (deliberative process privilege).

31.  Documents produced in response to Plaintiff's Freedom of Information Act request (FOIA Request 2026-02132AL) reveal the following sequence of events within the FAA.

32.  On January 29, 2026, Mary Snyder, a Program Analyst in the FAA's Airmen Certification Branch (AFB-721), emailed Allison Baxter, an attorney in the FAA's Aviation Litigation Division (AGC-300), Office of the Chief Counsel, reporting that the student pilot certificate had been issued in error because the examining official did not identify the prior revocation. Snyder confirmed that "[t]he revocation did not spell out that this was a lifetime revocation."

33.  On February 5, 2026, Attorney Baxter forwarded Snyder's email, the student pilot application, and the 2018 revocation order to Charles B. Gillespie, Supervisory Aviation Safety Inspector at the Anchorage Flight Standards District Office ("Anchorage FSDO").

34.  On February 6, 2026, Inspector Gillespie disseminated the matter to multiple FAA personnel at the Anchorage FSDO, including Office Manager Marcus D. Roulet,

stating: "I was contacted by Allison Baxter from AGC yesterday asking if we could process an EIR on this case." Gillespie summarized: "The revocation was a life time revocation but it doesn't spell that out in the attached revocation order." He asked the group: "What do you all think?"

35. On that same date, Roulet replied: "I will reach out to Allison for more clarity. I see it as Charlie does and would need more information what we are supposed to do about it."

36. The FAA withheld additional portions of these communications under FOIA Exemption 5 (deliberative process privilege), indicating that internal deliberations regarding the legal basis for the agency's position were ongoing.

37. FAA Order 2150.3C requires enforcement counsel, upon issuance of an emergency or non-emergency order suspending or revoking an airman certificate, to prepare and transmit an airman stop order (FAA Form 8060-8) to the Airmen Certification Branch (AFB-720) so the airman's record reflects adjudicated status. The fact that Plaintiff's 2025 applications cleared IACRA and AFS-760 issued certificates indicates those internal safeguards did not flag his record.

### F. The Informal Retraction Attempts

38. On February 12, 2026, Roulet called Plaintiff by telephone from (907) 242-0648. Plaintiff is not aware of that number being a published FAA office line for the Anchorage FSDO. Roulet informed Plaintiff that the FAA considered the certificate issuance to be an error and requested that Plaintiff visit the Anchorage FSDO to surrender the certificates. During the call, Roulet stated the FAA would be "forced to take action" if

Plaintiff did not voluntarily surrender, that it was "his job to get it back any way he could," and acknowledged that the situation "wasn't fair." Plaintiff was traveling outside the country at the time and told Roulet he would return to Alaska in March. Roulet stated during the call that if Plaintiff did not contact him upon his return, he would "take action in April", the month of the temporary certificate's expiration. Roulet subsequently texted Plaintiff the FSDO address. No written notice of any kind accompanied or preceded this telephone call.

39. Roulet reported to Attorney Baxter by email that same day regarding his telephone conversation with Plaintiff.

40. On or about March 18, 2026, the same Designated Pilot Examiner who had conducted Plaintiff's December 2025 checkride, John D. Jeffers, contacted Plaintiff at the FAA's direction and stated that the temporary certificate "will have to be retracted." Plaintiff requested written notice. Jeffers acknowledged the request. No written notice was provided.

41. On March 11, 2026, Plaintiff sent a written email to the FAA Airmen Certification Branch identifying himself by name and certificate number, asking whether the permanent certificate had been printed or mailed and whether there were any holds or restrictions on his airman record. The FAA did not respond in writing to either question.

42. On March 23, 2026, Plaintiff sent a formal letter to FAA Assistant Chief Counsel Taneesha Marshall, documenting the full factual and legal posture, requesting clarification, and offering to resolve the matter amicably. No substantive response has been received.

43. Plaintiff did not surrender either certificate. He retained counsel on April 7, 2026.

**G.    Congressional Inquiries**

44. Following the informal enforcement contacts, constituent casework inquiries were opened with the FAA on Plaintiff's behalf by United States Senator Lisa Murkowski, United States Senator Dan Sullivan, United States Congressman Nick Begich, and the Office of the Governor of Alaska. As of the date of filing, the FAA has not formally responded to any of these inquiries.

45. The FAA's enforcement action against Plaintiff was not taken in ignorance of other pilots conducting similar operations. On January 2, 2018, during a telephone call documented in FAA Inspector Shawn Toth's sworn investigation log, Plaintiff asked Toth directly whether the FAA was contacting anyone else using an aircraft to transport marijuana. Inspector Toth stated that he only had AMCO manifests with Plaintiff's information on them. This exchange establishes that: (1) the FAA had no independent basis for the investigation, as it was entirely dependent on what AMCO chose to send; and (2) AMCO sent only Plaintiff's manifests despite knowing other pilots were engaged in identical conduct.

46. Glenn Patrick Curtis (FAA Unique ID A0418243), of Anchorage, Alaska, is a specific identified pilot who conducted cannabis transport operations in Alaska under the same AMCO licensing framework as Plaintiff. The FAA conducted a documented ramp check of Curtis while he was actively engaged in substantially similar state-legal marijuana transport operations. FAA inspectors, airport police, and AMCO personnel were all

physically present during this inspection on or about November 9, 2021. Having directly witnessed Curtis conducting identical operations to those for which Plaintiff's certificate was revoked, the FAA took no certificate enforcement action against Curtis. Curtis currently holds an active Airline Transport Pilot (ATP) certificate with Gulfstream type ratings (G-100, G-1159, G-IV, IA-1125). He can actively fly commercial aircraft. Plaintiff cannot fly a single-engine piston aircraft.

47. On December 10-14, 2020, Plaintiff emailed Glenn Brown, an attorney at the FAA's Alaska Regional Counsel office, attaching a professional commercial price sheet from a company called Greatland Ganja openly advertising organized aircraft transport of marijuana products to Southeast Alaska destinations. The price sheet detailed tiered shipping fees by weight, offered to transport other cannabis companies' product for a percentage fee, and required shippers to sign a loss liability waiver. The FAA's own regional counsel received direct documentation of an organized, multi-company commercial cannabis air freight network operating across Alaska. The FAA took no action against any participant other than Plaintiff.

### H. The Absence of Formal Agency Action

48. As of the date of this Complaint, the FAA has issued no Order of Revocation, Emergency Order, Notice of Proposed Certificate Action, or any other formal written determination regarding Plaintiff's student pilot certificate or temporary private pilot certificate. No formal adverse action has been initiated through the certificate-action procedures prescribed by 14 C.F.R. § 13.19 and 49 U.S.C. § 44709, and Defendants have not provided the timely written notification and advisements mandated by the Pilot's Bill

of Rights.

49. The FAA's FOIA response (2026-02132AL), dated March 24, 2026, confirmed that the matter remains under active internal deliberation and that the agency is withholding pre-decisional materials under Exemption 5. A separate FOIA response (2025-04703) withheld materials under Exemption 7(A), confirming the existence of an active, ongoing investigation.

50. Plaintiff's temporary private pilot certificate expires on April 21, 2026. Absent Court relief, Plaintiff risks losing the practical ability to exercise pilot privileges based on the FAA's continued refusal to issue a permanent certificate and its informal efforts to impair the certificates already issued.

**I.     FAA Order 2150.3C and the "Permanent Disqualification" Process**

51. The FAA's position that the 2018 revocation constitutes a permanent, lifetime bar on future certification is not found in any statute or published regulation, including 49 U.S.C. § 44710, 49 U.S.C. § 44703, or 14 C.F.R. Part 61. Neither the statute nor any regulation uses the word "permanent," "lifetime," or any equivalent term in connection with § 44710 revocations.

52. FAA Order 2150.3C, the FAA's internal compliance and enforcement manual, uses the phrase "mandatory lifetime certificate revocations" when instructing enforcement counsel how to draft emergency orders in cases involving mandatory statutory revocations, including those under 49 U.S.C. § 44710. Order 2150.3C, Ch. 8, ¶13.c.(2). The Order is internal guidance—not a statute or regulation—that was not adopted through notice-and-comment rulemaking, and it cannot create binding obligations or expand the

consequences Congress prescribed or the FAA has codified in the CFR. Separately, in its general discussion of discretionary revocations under 49 U.S.C. § 44709(b), the Order explains that revocation renders the existing certificate no longer valid and not subject to reinstatement, but that a "person whose certificate has been revoked may be issued a new certificate provided that the person meets the qualification requirements for the new certificate." Order 2150.3C, Ch. 7, ¶ 4.a.(3).

53. In its specific discussion of mandatory revocations under 49 U.S.C. § 44710, the Order states that "[w]hen the revocation of a certificate under 49 U.S.C. § 44710 becomes final, the Administrator may not issue an airman certificate to the subject of the revocation unless the subject is acquitted of all charges on which the revocation was based or the conviction that formed the basis for the revocation is reversed." Order 2150.3C, Ch. 7, ¶ 4.b.(1) (citing 49 U.S.C. §§ 44710(e)(1) and (2)). No criminal charges were ever filed in Plaintiff's case, and no conviction exists to be reversed, rendering the Order's described acquittal-or-reversal pathway inapplicable on these facts.

### J. The Statutory Framework

54. Section 44710(b)(2) of Title 49 mandates revocation of "an airman certificate" based on certain drug-related activity. The statute contains no language imposing a permanent, lifetime, or indefinite bar on future certification.

55. The FAA's regulation, 14 C.F.R. § 61.13(d)(2), establishes an express one-year minimum bar on applications following revocation; it does not itself announce any perpetual application bar. FAA Order 2150.3C similarly states in its § 44709(b) discussion that a person whose certificate has been revoked "may be issued a new

certificate" if the person meets the qualification requirements for the new certificate. The 2018 revocation order contained no language restricting Plaintiff's right to reapply.

56. Section 44710(e) specifies when a § 44710(b)(2) revocation may be undone based on the underlying conduct: only upon acquittal of all charges or reversal of a conviction. Because no criminal charges were ever filed against Plaintiff, this statutory relief pathway is structurally inaccessible. A separate, discretionary law-enforcement exception exists under § 44703(f)(1) and § 44710(f), but it applies only when an appropriate law-enforcement official requests issuance to facilitate law-enforcement efforts; no such request has been made here, there is no pending criminal matter, and nothing about issuing a private pilot certificate to Plaintiff would facilitate any law-enforcement effort. Congress cannot have intended to create a permanent lifetime bar on a civil preponderance standard while simultaneously making the only conduct-based statutory relief contingent on criminal acquittal or reversal and the only other pathway dependent on a third-party law-enforcement request that is inapplicable on these facts. Under the FAA's reading, a pilot who used an aircraft to distribute cocaine and was convicted—but later acquitted on appeal—could receive a new certificate under § 44710(e)(2)(B)(ii), while a pilot who transported state-legal marijuana within Alaska, was never charged, and has maintained a clean record for eight years could not.

57. Section 44703(f) provides that the Administrator "may not issue an airman certificate to an individual whose certificate is revoked under section 44710," subject to narrow statutory exceptions. In the alternative, and in this posture, the present-tense "whose certificate is revoked" can reasonably be read to describe a current condition rather than a

perpetual disability. Plaintiff's 2018 certificate ceased to be effective when revoked; the 2025 certificates were new issuances under § 44703(a), following satisfaction of Part 61 requirements. FAA Order 2150.3C confirms that revocation means the prior certificate "is no longer valid" and that a person whose certificate has been revoked "may be issued a new certificate" upon meeting current qualification requirements.

58. Section 44710 does not use the words "permanent" or "lifetime" and no FAA regulation says otherwise. The FAA's "lifetime" phrasing originates in its internal enforcement manual (FAA Order 2150.3C), not in statute or rule. To the extent the FAA asserts a post-revocation issuance restriction, it must identify the specific statutory condition it believes applies and set that position out in a formal, written, reviewable decision; it cannot rely on an unpublished label or informal contacts.

59. The original 1984 statute governing airman certificate revocations for controlled substance violations, the Aviation Drug-Trafficking Control Act, Pub. L. 98-499, 98 Stat. 2312 (1984), contained an explicit five-year prohibition on reissuance, with discretionary authority for the Administrator to reissue after one year. Pub. L. 98-499, § 3 (adding § 602(b)(2)(A)-(B) to the Federal Aviation Act of 1958). When Congress codified the statute as 49 U.S.C. § 44710 and § 44703(f) in 1994 via Pub. L. 103-272, it removed both the five-year limit and the discretionary early reissuance provision. The current statute contains no time period for reissuance, no five years, no one year, no lifetime. Contemporaneous executive understanding described the 1984 law as requiring an individual "to wait 5 years, rather than 1, before being able to appeal the denial of a new

license by the FAA."[1]

## V.      **CLAIMS FOR RELIEF**

COUNT I — VIOLATION OF THE PILOT'S BILL OF RIGHTS AND PROCEDURAL

DUE PROCESS (Fifth Amendment; Pub. L. No. 112-153)

60.      Plaintiff incorporates the foregoing paragraphs by reference.

61.      Plaintiff has constitutionally protected liberty and property interests in his airman certificate and in pursuing his chosen vocation as a pilot. *Board of Regents v. Roth*, 408 U.S. 564 (1972).

62.      The Pilot's Bill of Rights, Pub. L. No. 112-153, requires timely, written notification to an individual who is the subject of an investigation relating to the approval, denial, suspension, modification, or revocation of an airman certificate. The required written notification advises, among other things, of the nature of the investigation and the specific activity on which it is based, that no response to a Letter of Investigation is required, that no adverse inference may be drawn from declining to respond, and that any response may be used as evidence.

63.      The FAA has attempted to deprive Plaintiff of his certificates through informal telephone calls without any written notice, has used a third-party Designated Pilot Examiner as an intermediary to communicate adverse certification determinations, and has deliberately withheld any formal written determination while the temporary certificate

---

[1] Ronald Reagan, Statement on Signing the Aviation Drug-Trafficking Control Act (Oct. 19, 1984), https://www.reaganlibrary.gov/archives/speech/statement-signing-aviation-drug-trafficking-control-act

*James M. Fejes, Jr., v. Bryan Bedford, et al.*                                             Page 20 of 31
4534-1002 / 4179924.3

approaches its expiration date. These actions violate both the procedural requirements of the Pilot's Bill of Rights and the Due Process Clause of the Fifth Amendment.

64. FOIA records independently confirm the Pilot's Bill of Rights violation. In responding to FOIA Request No. 2025-04703, the FAA withheld materials under Exemption 7(A) on the ground that the information "is contained in records related to an investigation that is ongoing." An "ongoing investigation" is exactly what triggers the Pilot's Bill of Rights' written-notice and advisement requirements.

65. The FAA further failed to follow the statutory and regulatory framework governing certificate enforcement. Under 49 U.S.C. § 44709 and 14 C.F.R. § 13.19, the FAA must provide the certificate holder with notice of proposed action stating the charges or other reasons for the proposed action and, except in an emergency, an opportunity to answer and be heard before taking adverse action against an airman certificate. None of these procedures was followed.

COUNT II — AGENCY ACTION UNLAWFULLY WITHHELD OR UNREASONABLY DELAYED (5 U.S.C. § 706(1))

66. Plaintiff incorporates the foregoing paragraphs by reference.

67. The APA authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Plaintiff seeks an order compelling the FAA to issue his permanent private pilot certificate, an agency action unlawfully withheld under 49 U.S.C. § 44703(a) after he satisfied all applicable Part 61 requirements.

68. Under the TRAC factors, *Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984), the FAA's delay is unreasonable. Congress has supplied a

framework that contemplates prompt, reviewable agency action on applications; human welfare is directly at stake; the agency has identified no competing priorities or resource constraints; Plaintiff suffers concrete prejudice from the continued withholding of his permanent certificate; and the requested relief does not intrude upon legitimate agency discretion, but instead requires the agency to discharge a discrete duty it has unlawfully withheld.

69. The FAA's own FOIA response to Request No. 2025-04703 invoked Exemption 7(A) on the grounds that the requested information "is contained in records related to an investigation that is ongoing", a representation by the FAA that Plaintiff was the subject of an active investigation at that time, which independently triggered the Pilot's Bill of Rights' written notice requirement; the FAA cannot simultaneously claim an ongoing investigation exists for FOIA purposes while denying that any investigation existed for Pilot's Bill of Rights purposes.

COUNT III — AGENCY ACTION ARBITRARY AND CAPRICIOUS AND WITHOUT OBSERVANCE OF PROCEDURE REQUIRED BY LAW (5 U.S.C. § 706(2)(A), (D))

70. Plaintiff incorporates the foregoing paragraphs by reference.

71. Defendants have sought to impair or deprive Plaintiff of FAA-issued certificate privileges through informal communications and coercive surrender demands, while withholding any formal written certificate action that would provide the notice, stated reasons, and process required by law, including the Pilot's Bill of Rights and the certificate-action procedures prescribed by Congress and the FAA's own regulations. Defendants' informal efforts to deprive Plaintiff of certificate privileges, coupled with their withholding

of any written certificate action and required advisements, are reviewable here to prevent evasion of the procedures Congress prescribed.

72. Defendants' conduct constitutes agency action "without observance of procedure required by law" within the meaning of 5 U.S.C. § 706(2)(D), and warrants injunctive and declaratory relief.

73. Defendants' conduct is independently arbitrary and capricious under § 706(2)(A). Defendants issued Plaintiff's student pilot certificate and temporary private pilot certificate, then—without issuing any written determination or reasoned explanation—attempted to negate those issuances through informal communications and delay. *FCC v. Fox Television Stations*, 556 U.S. 502, 515 (2009); *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983). In addition, the agency has never grappled with 14 C.F.R. § 91.19(b)'s express carveout for carriage "authorized by or under any Federal or State statute or by any Federal or State agency," notwithstanding Plaintiff's AMCO-licensed operations, further underscoring the arbitrary and capricious nature of its approach.

COUNT IV — FIFTH AMENDMENT EQUAL PROTECTION — CLASS-OF-ONE

74. Plaintiff incorporates the foregoing paragraphs by reference.

75. The Equal Protection component of the Fifth Amendment's Due Process Clause prohibits intentional and arbitrary discrimination against an individual by the government. A "class-of-one" equal protection claim exists when the government singles out one individual for adverse treatment while treating similarly situated individuals differently, without rational basis. *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000);

*Gerhart v. Lake County*, 637 F.3d 1013, 1022 (9th Cir. 2011); *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) (class-of-one viable in licensing and permitting context).

76.     The FAA's enforcement action against Plaintiff was not taken in ignorance of other pilots conducting similar operations. The FAA had direct, documented knowledge that multiple Alaska pilots were openly transporting state-legal marijuana by aircraft under AMCO licensing, and chose to pursue only Plaintiff. The equal protection violation operates on two levels. At the referral level: AMCO targeted Plaintiff through a biased, predetermined investigation (evidenced by the Stonecipher email) while conducting no similar investigation of other operators. At the enforcement level: the FAA received the biased AMCO referral as to Plaintiff alone, physically inspected Glenn Curtis during identical conduct and took no action, received direct documentation of industry-wide air cannabis transport from Plaintiff himself and took no action, yet continues to pursue Plaintiff's lifetime disqualification.

77.     Plaintiff and Curtis are similarly situated in all material respects: both held valid AMCO cannabis transport licenses; both used aircraft to transport marijuana to licensed retail stores within Alaska; both operated under the same Alaska Marijuana Control Board regulatory framework; both were Alaska-based operators in the same industry. The only material difference is that AMCO referred Plaintiff to the FAA, while other operators including Curtis were not referred. The FAA's selective enforcement against Plaintiff; revoking his certificate, physically inspecting Curtis and taking no action, receiving the Greatland Ganja documentation from Plaintiff himself and taking no action

against that operator, and now pursuing informal enforcement against Plaintiff's freshly-issued 2025 certificates; while multiple identically situated pilots continue to fly unimpeded, lacks any rational basis and constitutes intentional, irrational discrimination in violation of the Fifth Amendment's Equal Protection guarantee.

COUNT V —ESTOPPEL AND REGULATORY ENTITLEMENT

78. Plaintiff incorporates the foregoing paragraphs by reference.

79. The FAA is equitably estopped from rescinding the certificates it affirmatively issued after full qualification review. The Supreme Court has declined to hold "that there are no cases in which the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government." *Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51, 60-61 (1984). The Ninth Circuit has held that "where justice and fair play require it, estoppel will be applied against the government," provided the party shows "affirmative misconduct going beyond mere negligence" and that "the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage." *Watkins v. United States Army*, 875 F.2d 699, 707 (9th Cir. 1989) (en banc).

80. The affirmative misconduct here operates at multiple independent institutional levels: (1) the FAA's authorized Designated Pilot Examiner pre-cleared Plaintiff's eligibility with FAA before the checkride; (2) the FAA's IACRA certification system processed Plaintiff's application and returned no disqualifying flag; (3) following final adjudication of the revocation by the NTSB and the Ninth Circuit, FAA Order

2150.3C required enforcement counsel, upon issuance of any revocation or suspension order, to prepare and transmit an airman stop order (FAA Form 8060-8) to the Airmen Certification Branch (AFB-720) so the airman's record reflects adjudicated status, yet Plaintiff's applications cleared and certificates were issued; (4) the FAA's medical division reviewed and affirmed Plaintiff's medical certificate without identifying any disqualification; and (5) the FAA issued certificates and remained silent for approximately five months while Plaintiff incurred substantial reliance costs. This pattern of independent institutional failures at every level of the FAA's certification infrastructure cannot be characterized as mere negligence.

81.    Plaintiff's reliance is documented: flight training costs, examination fees, the checkride fee, a medical examination, and professional decisions structured around certificate privileges, including a $12,000 Cold Bay charter necessitated by Plaintiff's voluntary grounding after the February 12, 2026 Roulet call. The harm is a career-ending, lifetime occupational bar imposed through informal telephone calls, after the FAA's own certified agent confirmed eligibility, the FAA's own systems processed the application without flagging, and the FAA's own headquarters issued the certificates. Eight years of clean record, complete divestiture of the underlying business, and demonstrated current qualifications, combined with system-level institutional failure at every checkpoint, more than satisfy the *Heckler* serious-injustice standard.

82.    Independently of equitable estoppel, the FAA is bound by its own published regulations and may not deviate from them to Plaintiff's detriment. *Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Service v. Dulles*, 354 U.S. 363 (1957). Under 14

C.F.R. § 61.13(d)(2), "[u]nless otherwise authorized by the Administrator, a person whose pilot, flight instructor, or ground instructor certificate has been revoked may not apply for any certificate, rating, or authorization for 1 year after the date of revocation." This regulation establishes a one-year minimum bar on *applications* following revocation and, by its terms, contemplates that applications may be submitted and processed thereafter, absent some other lawful prohibition. Plaintiff waited eight years following the 2018 revocation, satisfied the applicable Part 61 requirements, and the FAA issued certificates in 2025. To the extent the FAA contends a separate statutory bar prevents *issuance* of a certificate in Plaintiff's circumstances, the FAA must state that position through a formal, written, reviewable action and comply with the written-notice and procedural requirements applicable to certificate denials or certificate actions; it cannot enforce an unwritten, informal "lifetime" disqualification through telephone calls and delay. The FAA's internal guidance in Order 2150.3C, which is not codified in the CFR and was not adopted through notice-and-comment rulemaking, cannot create additional application prohibitions beyond those imposed by statute or regulation. *Chrysler Corp. v. Brown*, 441 U.S. 281, 301–02 (1979).

83. Section 44710 contains no "lifetime" or "permanent" language. But Congress did enact an express statutory restriction on *issuance* in controlled-substance revocation cases: 49 U.S.C. § 44703(f) provides that the Administrator "may not issue an airman certificate to an individual whose certificate is revoked under section 44710" except (1) when the Administrator decides issuance will facilitate law enforcement efforts, and (2) as provided in 49 U.S.C. § 44710(e)(2). Whatever the correct interpretation and

application of those statutory provisions to Plaintiff's non-criminal posture, the FAA cannot implement any asserted statutory bar through an unpublished internal label ("mandatory lifetime") and informal surrender demands while withholding a written decision. The FAA must proceed through a formal, written, reviewable denial or certificate action that states the legal basis for its position and provides the procedural protections Congress required.

COUNT VI — MEDICAL CERTIFICATE AFFIRMED BY OPERATION OF LAW (14 C.F.R. § 67.407)

84. Plaintiff incorporates the foregoing paragraphs by reference.

85. On July 15, 2025, Plaintiff received a Second Class FAA medical certificate from FAA-designated Aviation Medical Examiner Dr. Robert Thomas. The certificate was transmitted to FAA headquarters on July 23, 2025.

86. Under 14 C.F.R. § 67.407(c), any action taken that affects a medical certificate is "considered to be affirmed as issued" unless the Federal Air Surgeon, the Manager of the Aeromedical Certification Division, or a Regional Flight Surgeon reverses the issuance within 60 days after the date of issuance. The 60-day window expired on or about September 13, 2025. No authorized official reversed the certificate.

87. Plaintiff's Second Class medical certificate was affirmed by operation of federal regulation. While the FAA retains statutory authority under 49 U.S.C. § 44709 to take subsequent adverse action against an affirmed medical certificate through formal proceedings with notice and hearing rights, no such proceedings have been initiated. Because 14 C.F.R. § 61.23 requires a valid medical certificate to exercise private pilot

privileges, and because no formal proceedings to revoke or amend Plaintiff's affirmed medical certificate have been initiated, the FAA cannot lawfully prevent Plaintiff from exercising his pilot privileges on medical grounds through informal means.

COUNT VII — MANDAMUS (28 U.S.C. § 1361)

88.     Plaintiff incorporates the foregoing paragraphs by reference.

89.     Title 49 U.S.C. § 44703(a) provides that the Administrator "shall issue an airman certificate" to an individual when the Administrator finds, after investigation, that the individual is qualified and physically able. At minimum, the FAA has a clear, nondiscretionary duty to act on Plaintiff's application through a timely, formal, written, reviewable decision; and, absent a lawful written basis for denial, to issue the permanent certificate consistent with the regulatory framework that governs temporary-to-permanent processing.

90.     Plaintiff has satisfied every qualification prescribed by 14 C.F.R. Part 61, passing all required knowledge examinations, obtaining a current medical certificate affirmed by operation of law, and completing a successful checkride. No lawful basis has been stated by the FAA for withholding the permanent credential.

91.     Plaintiff has no other adequate remedy. No FAA order exists from which to seek administrative review; the NTSB lacks jurisdiction absent a formal order; and the stated expiration date of Plaintiff's temporary certificate imminently threatens concrete harm.

COUNT VIII — DECLARATORY JUDGMENT (28 U.S.C. § 2201)

92.     Plaintiff incorporates the foregoing paragraphs by reference.

93. An actual controversy exists between Plaintiff and Defendants regarding the legal effect of the 2018 revocation on Plaintiff's eligibility for future airman certification, the meaning of 49 U.S.C. § 44710, and the legal force of FAA Order 2150.3C.

94. Plaintiff is entitled to a declaration that: (a) 49 U.S.C. § 44710 does not impose a permanent lifetime bar on future certification following a revocation under subsection (b)(2); (b) the FAA's characterization of § 44710 revocations as imposing a "mandatory lifetime" bar is unsupported by the statutory text; (c) the structural operation of § 44710(e), which makes the sole statutory relief pathway inaccessible in non-conviction cases, precludes the FAA's interpretation that § 44710 imposes a permanent bar; and (d) alternatively, § 44703(f)'s present-tense reference to an individual "whose certificate is revoked" does not permanently bar issuance of a new certificate to an individual whose prior certificate has already been revoked and extinguished.

## VI. **<u>PRAYER FOR RELIEF</u>**

A. Issue a temporary restraining order and preliminary injunction prohibiting the FAA from rescinding, revoking, suspending, canceling, placing any hold upon, or otherwise impairing Plaintiff's student pilot certificate and temporary private pilot certificate through informal means and without written notice and the procedural protections required by law, and requiring the FAA to issue the permanent private pilot certificate, or alternatively to appear before this Court on an expedited basis and show cause why the permanent certificate has not been issued, pending further order of this Court (including pending a preliminary injunction hearing);

B. Issue a writ of mandamus compelling the FAA to issue Plaintiff's permanent

private pilot certificate;

C. Declare that 49 U.S.C. § 44710 does not impose a permanent lifetime bar on future certification and that the 2018 revocation does not bar issuance of a new certificate;

D. Declare that the structural operation of § 44710(e) precludes permanent disqualification in non-conviction cases;

E. Declare that the FAA's informal attempts to retract Plaintiff's certificates without written notice violate the Pilot's Bill of Rights and the Due Process Clause of the Fifth Amendment;

F. Enjoin the FAA from taking any adverse action against Plaintiff's certificates without first providing the written notice and procedural protections required by the Pilot's Bill of Rights, Pub. L. No. 112-153;

G. Declare that the FAA's selective enforcement against Plaintiff, pursuing enforcement against Plaintiff while taking no action against identically situated pilots engaged in the same conduct with FAA knowledge, violates the Equal Protection component of the Fifth Amendment;

H. Award Plaintiff costs of suit; and

I. Grant such other and further relief as the Court deems just and proper.

DATED this 20th day of April, 2026

ZUBER LAWLER LLP
Attorney for James M. Fejes, Jr.

By: _/s/ J. Raza Lawrence_
J. Raza Lawrence, *Pro Hac Vice*